J-S26003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.S.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| K.J.K. | |
| Appellant | No. 1450 MDA 2014 |

Appeal from the Order Entered July 10, 2014
In the Court of Common Pleas of Lancaster County
Domestic Relations at No(s): 2005-02621

BEFORE:  OTT, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                          **FILED MAY 08, 2015**

K.J.K. (Father) appeals *pro se* from the order entered July 10, 2014, in the Court of Common Pleas of Lancaster County, that denied his petition for redress of grievances, which the trial court treated as a petition to modify child support obligations to terminate arrears.[1]  Based upon the following, we affirm.

_____

[1] Father's appeal from the July 10, 2014 order was docketed on August 19, 2014.  In this regard, we note the appeal period is 30 days after entry of the order from which the appeal is taken.  Pa.R.A.P. 903(a).  In a matter subject to the Pennsylvania Rules of Civil Procedure, the date of entry is the day that the clerk makes the notation in the docket that notice of entry of the order has been given pursuant to Pa.R.C.P. 236(b).  **See** Pa.R.A.P. 108(b).

Here, the trial court docket does not include a notation that notice of the order was sent to the parties on any particular day, but simply reflects a "Filing Date" of July 10, 2014.  Therefore, arguably, the appeal, as docketed on August 19, 2014, is not untimely.  **See, e.g., In re L.M.**, 923 A.2d 505,
*(Footnote Continued Next Page)*

Father and M.S.K. (Mother) are the parents of one minor child.[2]

Mother filed a complaint for support on August 17, 2005, and between 2005

and 2007 several support orders were entered. On April 23, 2007, Father's

support obligation of $209.95 weekly was reduced to $0.00 due to his lack

of income and assets. In this regard, Father was incarcerated on February

_(Footnote Continued)_ ──────────────

508–509 (Pa. Super. 2007) (appeal not untimely where there was no indication on the docket that Rule 236 notice was sent); **Verticle Resources, Inc. v. Bramlett**, 837 A.2d 1193 (Pa. Super. 2003) (same).

Furthermore, Father is incarcerated. As such, the notice of appeal is deemed filed when it is deposited into the prison mail system. **See** Pa.R.A.P. 121(a) (a _pro se_ filing submitted by an incarcerated person is deemed filed as of the date it is delivered to the prison authorities for mailing, or placed in the institutional mailbox, as evidenced by a properly executed prisoner cash slip or other reasonably verifiable evidence of that date). Although Father's proof of service reflects a mailing date of August 3, 2014, within the 30 day appeal period, there is no actual evidence of record as to the date Father _initially_ placed his appeal papers into the prison mail system.

However, Father's appeal papers indicate that by correspondence dated August 8, 2014, the Deputy Prothonotary of Lancaster County returned Father's notice of appeal, initially time-stamped as having been filed on August 7, 2014, directing Father to re-submit his notice of appeal with the correct case number and with the docket entries attached. The August 7th notice of appeal does, however, include the correct case number. Father re-submitted his appeal papers, which then were docketed on August 19, 2014. As the failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, **see** Pa.R.A.P. 902, Father should have the benefit of the August 7, 2014, initial filing date, which is within the 30 day appeal period. Therefore, this appeal is not untimely.

[2] The parties' minor child was 16 years of age at the time of the entry of the July 10, 2014 order.

17, 2007, and was expected to remain in prison well past his child's eighteenth birthday. By order issued August 19, 2008, Father was required to pay $20.00 per month on the arrears.

On June 2, 2010, following a March 20, 2010 request for modification by Father, an interim order was entered obligating Father to pay $15.00 per month on arrears and $5.00 on fees. Following a hearing, the trial court made final the interim order. Father appealed, and this Court affirmed. ***See [M.J.K.] v. [K.J.K]***, 31 A.3d 751 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 34 A.3d 83 (Pa. 2011).

On September 27, 2012, Father filed a petition for modification. At the time of the November 2, 2012 conference, Father reported that he earned $.42/hour and worked 6.5 hours per day, five days a week, resulting in weekly earnings of $13.65 and $59.15 a month. Father reported total monthly expenses of $65.23 without including his child support arrears payment. It was noted by the conference officer that this total could not be accurate given his monthly earnings of $59.15. ***See*** Summary of Trier of Fact, 11/20/2012, at 3. On November 21, 2012, the trial court issued an order, decreasing child support arrears payments to $10.00 on arrears and $5.00 for fees, a total of $15.00 a month.

On January 24, 2014, Father filed a petition for modification, requesting a further $5.00 decrease, stating commissary items had

increased in price and his change in diet required him to purchase healthier foods and increased his expenses.[3] After a conference on March 4, 2014, the trial court, on March 5, 2014, issued an order decreasing payments on arrears and fees to $10.00 a month.

Three months later, on June 13, 2014, Father filed the underlying petition for redress of grievances *in forma pauperis*, asserting "the arrears should be stopped or dismissed under state law," and further claiming, *inter alia*, his prison pay is "not income." Father's Petition for Redress, 1/24/2014, at 2, ¶¶4, 6 (capitalization removed). The trial court denied Father's petition and this appeal followed.[4]

Father raises the following issues on appeal:

1. Whether incarceration alone is a substantial or material change in circumstances, to attach [K.J.K.'s] prison pay for arrears?

2. Whether the lower court erred, stating [K.J.K.] could not attack this issue as "he failed to file an appeal within 20

_____

[3] The conference officer's report noted, under the heading "Facts Agreed Upon," that "[Father] states if payments on arrears/fees is decreased to $10.00/month, modification petitions will not be filed as amount is adequate to allow [Father] to meet his monthly expenses." Summary of Trier of Fact, 3/4/2014, at 3.

[4] On August 28, 2014, the trial court directed Father to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal within 21 days of the court's order. Father timely complied with the court's order. We note that the envelope included in the certified record with Father's concise statement reflects Father's return address as the state correctional institution and a postmark of September 16, 2014. **See** Pa.R.A.P. 121(a), **supra**.

day time limit[5] after an Order is made," when [K.J.K.] has a RIGHT at any time to file for Redress of grievance?[6]

3.   Whether the lower court erred in not relying on the plain language of the State Income Statu[t]es [referring to 23 Pa.C.S. § 4302 and Pa.R.C.P. 1910.16-2] which state[] "nothing" about incarcerated individuals?

4.   Whether the lower court erred when not properly addressing [K.J.K.'s] State Rule 1910.19(f) claim, as it "precludes" the payment of support for incarcerated individuals (which support includes arrears) and State Statu[t]e is "vague" on this issue?

5.   Whether the lower court erred when not closing the case under federal Code of Regulations Law [45 C.F.R. 303.11(b)(5)], as [K.J.K] is incarcerated with no chance of parole during the duration of the child's minority and [K.J.K.] has no assets or income?

6.   Whether the lower court erred when not closing the case and ruling on the Ambiguity under Rule of Lenity, for Federal and State Statu[t]e conflicts under "income" by definition from the I.R.S. and U.S. Dept. of Treasury; under the attached exhibit "A"?

Father's Brief at 2–3.  As these issues are interrelated, we address them in one discussion.

_____

[5] *See* Pa.R.C.P. 1910.11(f) ("Each party shall be provided … with a copy of the interim order and written notice that any party may, within twenty days after the date of receipt or the date of the mailing of the interim order, file a written demand with the domestic relations section for a hearing before the court.").

[6] Contrary to the argument of Father, the trial court considered Father's Petition for Redress of Grievance.  *See* Trial Court Opinion, 7/10/2014, at 1 n.1 ("There is no recognizable action for a "Petition for Redress of Grievances" but this Court is considering the petition as a request for modification.").

At the outset, we state our standard of review:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Kimock v. Jones**, 47 A.3d 850, 854 (Pa. Super. 2012) (citations omitted).

Under Pennsylvania Rule of Civil Procedure 1910.19(f) modification is permissible with respect to arrears. Specifically,

> … the court **may** modify or terminate a charging order for support and remit any arrears, all without prejudice, when it appears to the court that: …
>
> (2) the obligor is unable to pay, has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future.

Pa.R.C.P. 1910.19(f)(2) (emphasis supplied). "However, the Rule does not automatically entitle an obligor to this broad relief." **Plunkard v. McConnell**, 962 A.2d 1227, 1231 (Pa. Super. 2008) (citation omitted), *appeal denied*, 980 A.2d 111 (Pa. 2009). Where the arrears were incurred prior to the incarceration, the support obligor will not be permitted to "benefit" from his incarceration. **Id.** at 1231.

Here, the court reasoned:

[Father's] case can only be closed out and arrears remitted when there is, "No reasonable prospect that the obligor will be able to pay in the foreseeable future." [Pa.R.C.P.] 1910.19(f). However, [Father] will be released in 2027 if he serves his maximum term, and he can resume working and paying off arrears at that time. Therefore, even if Father was deemed unable to pay because he lacked viable income, the case would continue.

Trial Court Opinion, 7/10/2014, at 8. For the following reasons, we find no abuse of discretion with the trial court's decision denying Father relief on his petition.

First, we agree with the trial court's analysis that, as Father did not file a written demand with the domestic relations section for a hearing before the court within 20 days following the March 5, 2014 support order, *see* Pa.R.C.P. 1910.11(f), his only recourse now is a petition for modification. We further agree that Father has not shown any change in circumstances. As the trial court explained:

Because [Father] failed to file for a hearing within the appeal deadline period, the only other legal avenue available to him under the applicable Pennsylvania support law is to have his filing considered by the Court [] as a petition for modification. The requirements for a petition for modification are that the petitioner show a material and substantial change in circumstances. In past petitions [Father] has shown the change in process of commissary items, and the Court has responded accordingly by decreasing the order. In this Petition for redress of grievance, [Father] alleges no change in current circumstance.

Trial Court Opinion, 7/10/2014, at 7.

Here, Father simply claims that his prison wage income should not be attached for payment of arrears. However, as already stated, Father may

not be permitted to benefit from his incarceration to avoid nonpayment of his pre-incarceration arrears. *See Plunkard*, 962 A.2d at 1231.

Secondly, Father's argument that prison wages do not constitute income is based upon an Internal Revenue Service tax refund fraud letter that has no application to this matter. We note that the letter does not address the issue of whether or not wages earned by incarcerated inmates are income for purpose of Pennsylvania's support law.[7] In fact, the definition of "income" for purposes of support, as set forth in 23 Pa.C.S. §

_____

[7] Father has appended to his brief a copy of an undated letter, on the letterhead of the Department of Treasury, addressed to the Department of Corrections, and signed by Charles A. Jenkins, Special Agent in Charge, which states, in part:

Attn: Pennsylvania Inmates

IRS Criminal Investigation has discovered that incarcerated individuals have been committing refund fraud by filing federal income tax returns that are supported by false information/statements (specifically, false wages/income and withholding).

This letter is being sent to stress to inmates that money given to them (as gifts from family members, compensation given for participating in work assignments or education programming at the institution, etc.) does not constitute income or wages. …

Incarcerated individuals that file federal income tax returns that claim these amounts as wages/income and withholding are committing refund fraud ….

Father's Brief, Exhibit "A".

4302 of the Domestic Relations Code,[8] is expansive and includes items such as wages, compensation in kind, and "any form of payment due to and collectible by an individual regardless of source." In the instant case, Father's remuneration for work he does as an incarcerated inmate fits reasonably within Section 4302.[9, 10] Therefore, Father's reliance on the Internal Revenue Service tax refund fraud letter fails.

_____

[8] Section 4302 states that *"Income"*

> Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; ***and any form of payment due to and collectible by an individual regardless of source.***

23 Pa.C.S. § 4302 (emphasis supplied).

[9] Although Father cites the language of Pa.R.C.P. 1910.16-2(b)(1), which states "Neither public assistance nor Supplemental Security Income benefits shall be counted as income for purposes of determining support," this provision fails to buttress Father's argument that his prison wages should not be regarded as income for purposes of payment of his arrears. ***See*** Father's Brief at 6.

Thirdly, Father's reliance upon 45 C.F.R. 303.11(b)(5), regarding case closure criteria, is misplaced. As we stated in Father's prior appeal, "[t]his federal regulation has no application to [Father's] case." *[M.J.K.] v. [K.J.K]*, 31 A.3d 751 (Pa. Super. 2011) (unpublished memorandum, at 2), *appeal denied*, 34 A.3d 83 (Pa. 2011).

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015

*(Footnote Continued)*

[10] To the extent that Father, in his brief at page 6, quotes from Justice Eakins' dissenting opinion in *Fisher v. Commonwealth of Pennsylvania, Department of Corrections*, 979 A.2d 840 (Pa. 2009), that states "the definition of income is relevant only in calculating support, not in collecting support," 979 A.2d at 841, we note that in *Fisher* the Pennsylvania Supreme Court dismissed the appeal as moot. The Supreme Court's ruling left standing the Commonwealth Court's decision that the Department of Corrections should use the definition of "income" found in 23 Pa.C.S. § 4302 in deciding what funds were available for withdrawal to pay the inmate's support obligations. *Fisher v. Commonwealth*, 926 A.2d 992 (Pa. Comwlth. 2007), *appeal dismissed*, 979 A.2d 840 (Pa. 2009).